**In the Matter of CSY YACHT CORPORATION, Debtor.**

**No. 81–1568.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Oct. 11, 1983.

Jeffrey Warren, Tampa, Fla., for debtor.

R.C. Fernon, Jr., Tampa, Fla., for claimant.

## ORDER ON OBJECTION TO CLAIM

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a business reorganization case and the matter under consideration involves the interpretation of § 507 of the Bankruptcy Code which grants priority treatment to the extent of $900 to certain types of consumer claims. Specifically, this Section grants fifth priority to an allowed unsecured claim arising from the deposit of money in connection with the purchase, lease, or rental of property for personal or household use, which was not delivered or provided. The underlying facts as presented at the final evidentiary hearing are basically without dispute and can be summarized as follows:

CSY Yacht Corporation (CSY) was, at the time pertinent and still is, a corporation engaged primarily in the construction of a certain type of yacht. As part of its marketing program, CSY also charted the yachts to others as part of a special program designed to provide tax incentives to the purchasers of the yachts built by CSY. The basic idea of this program was to assist a consumer to purchase a yacht through a rental program or to give the purchaser of the CSY yacht an investment tax credit and additional fringe benefits by way of some income from the charter program.

Frank L. Richards (Richards), the claimant who filed the priority claim in the amount of $900 and the balance as an unsecured general claim, is an airline pilot residing in Westport, Connecticut. Richards became interested in purchasing one of the yachts built by CSY. Having investigated different programs, Richards agreed to purchase a yacht under a lease agreement whereby he was to lease the yacht to CSY for four years who would use the yacht as a demonstrator and at the end of the four years, the lease was to terminate and Richards would obtain full ownership of the yacht.

As noted, although the lease provided that during the life of the lease Richards was not permitted to use the yacht, it was understood by the parties that he had the right to use the yacht for two weeks each year without charge. During the term of the lease, all costs of maintenance, storage, dockage and all expenses attendant to maintaining the yacht in good shape was to be borne by CSY and only the insurance was to be paid by Richards.

The contract called for a total purchase price of $70,000. Richards paid $1,000 on March 6, 1981 and the amount of $6,590 on March 30, 1981 to CSY. The contract also provided that during the four year term of the lease, the finance charges for the purchase price was paid out of the rental to be paid by CSY to Richards who financed the transaction. According to the contract, at the end of the four years Richards was to receive the yacht, although Richards was to assume the payments remaining under the financing agreement and was to complete the contract with the financier of the transaction, Yaeger Marine. The contract further provided that Richards agreed that CSY may sublease the yacht to the general public from time to time and that Richards has no right to prohibit, prevent, interfere or limit CSY from leasing the yacht to other persons. The contract called for a payment in the amount of $25,612 per year by CSY to Richards for the use of the yacht.

The purchase agreement was signed by Richards with CSY for a 33 foot Sygne yacht on April 6, 1981, for the total purchase price of $72,292. It is without dispute that the type of yacht purchased was not suitable for general charter, but was only to be used as a demonstrator; that Richards intended to use this particular yacht after the termination of the lease as a pleasure yacht and entered into this particular trans-

action only because otherwise he could not afford to purchase this particular yacht. It is also without dispute that Richards never received the yacht simply because the yacht was never built by CSY.

These are the relevant facts as established by the evidence presented at the final evidentiary hearing which furnishes the record which this Court must consider in determining the validity of the priority claim asserted by Richards. At first blush, it appears that this was a business transaction rather than an orthodox purchase by a consumer for which the priority status provided for by § 507(a)(5) was designed. However, considering the totality of the circumstances surrounding this transaction, after the analysis it is clear, and this Court is satisfied, that this yacht was purchased by Richards primarily for family and personal use rather than to be used in a business. Under the lease he was not to receive any income whatsoever and all lease payments were to be made to the finance company while he saved himself the interest charges during the four year term of the lease, the dockage, storage charges and maintenance. The transaction was, no doubt, designed to assist him to purchase the yacht which he otherwise could not have purchased. There is no evidence in this record that this was a purchase for the purpose of using the yacht in a commercial enterprise from which he expected to derive some profits or some direct or indirect monetary benefits.

Neither research of counsel nor independent research found any persuasive authority which would assist the court in determining Richard's right to claim priority under § 507(a)(5) to $900 of his claim. The legislative history of § 507(a)(5) in the Senate indicates that the original intent was to place a limit on the income of the individual consumer debtor who would be entitled to gain the benefit of this priority, the ceiling having been fixed at $20,000 income per year or in the case of husband and wife, the two incomes can be aggregated for the purpose of establishing the $20,000 ceiling if either or both parties assert such priority claim. *See, Notes on the Committee on the Judiciary, Senate Report No. 95–989,* U.S. Code Cong. & Admin.News 1978, p. 5787, particularly, the Senate hearings testimony of Professor Vern Countryman at pages 848–849. The ultimate version which emerged represents a compromise between the Senate and the House and the ultimate version does not include any limitations on the earnings of an individual consumer debtor before he is entitled to claim priority under this Section. Thus, it is clear that Congress did not intend to exclude from the priority provision of this Section, individual debtors whose income is greater than the ceiling originally proposed by the Senate and who might purchase items which are substantially more expensive than the ordinary consumer goods. Moreover, the Section uses the phraseology which is identical with the phraseology used in the UCC in defining consumer goods which indicates the controlling factor is the intended use of the goods purchased and not the nature of the goods purchased. This being the case it is evident and this Court is satisfied that the yacht purchased by Richards was for personal family and household use, even though initially it was leased to CSY to be used as a demonstrator during the first four years of the lease.

Accordingly, this Court is satisfied that the objection to the priority part of the claim interposed by the debtor is not well taken and should be overruled.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the objection to claim number 115 be, and the same hereby is, overruled and the claim is allowed in the amount of $900 as priority pursuant to § 507(a)(5) and the balance in the amount of $6,690 shall be allowed as a general unsecured claim.